**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jim Munene,<br><br>             Plaintiff,<br><br>v.<br><br>Alejandro Mayorkas,<br><br>             Defendant. | No. CV-19-00220-TUC-RM<br><br>**ORDER** |

On June 28, 2024, Magistrate Judge Jacqueline M. Rateau issued a Report and Recommendation ("R&R") (Doc. 163), recommending that this Court grant Defendant Alejandro Mayorkas's Motion for Summary Judgment (Doc. 126) and deny Plaintiff Jim Munene's Motion for Partial Summary Judgment (Doc. 113). Plaintiff filed an Objection (Doc. 164), to which Defendant responded (Doc. 165).

**I.      Standard of Review**

A district judge must "make a de novo determination of those portions" of a magistrate judge's "report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The advisory committee's notes to Rule 72(b) of the Federal Rules of Civil Procedure state that, "[w]hen no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation" of a magistrate judge. Fed. R. Civ. P. 72(b) advisory committee's note to 1983 addition. *See also Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999) ("If no objection or only partial objection is made, the district court

judge reviews those unobjected portions for clear error."); *Prior v. Ryan*, CV 10-225-TUC-RCC, 2012 WL 1344286, at *1 (D. Ariz. Apr. 18, 2012) (reviewing for clear error unobjected-to portions of Report and Recommendation).

## II. Background

Plaintiff was formerly employed by the United States Customs and Border Protection ("CBP"), first as a Border Patrol Agent ("BPA") at the Douglas Station in Arizona, and then, effective January 29, 2012, as a Supervisory Border Patrol Agent ("SBPA") at the Ajo Station. (Doc. 128 ¶¶ 1-2; Doc. 139 ¶¶ 1-2.)

In August 2012, Plaintiff was indicted on charges of rape and kidnapping, and in September 2012, CBP suspended him without pay. (Doc. 128 ¶¶ 4, 6; Doc. 139 ¶¶ 4, 6.) In May 2013, Plaintiff was acquitted of the criminal charges, and in June 2013, he was ordered to report for duty in an administrative-only capacity pending an internal investigation. (Doc. 128 ¶¶ 7-8; Doc. 139 ¶¶ 7-8.) In September 2013, CBP determined there was insufficient evidence to support administrative action against Plaintiff, closed its internal investigation, and restored Plaintiff's law enforcement authority. (Doc. 128 ¶¶ 19-20; *see also* Doc. 139 ¶¶ 19-20.)

Plaintiff brings this action pro se pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, asserting discrimination based on race, color, and national origin; retaliation; and a hostile work environment. (Doc. 37.) In his operative First Amended Complaint (Doc. 37), as construed by the Court (Doc. 85) and clarified by Plaintiff at his deposition (Doc. 128-3 at 12-13),[1] Plaintiff alleges that Defendant discriminated against him by taking a series of actions in 2013 ("2013 Employment Actions"), including (1) denying him administratively uncontrollable overtime ("AUO"); (2) denying his request to exercise while on duty; (3) denying him an office, computer access as a supervisor, computer equipment, and a telephone; (4) charging him a health insurance premium while he was on active duty in the military; (5) denying him administrative leave time for house hunting; (6) temporarily denying him a personal

---

[1] Record citations herein refer to the page numbers generated by the Court's electronic filing system.

- 2 -

identity verification ("PIV") card; and (7) changing time he spent traveling for training in November 2013 from overtime to travel compensatory time.  Plaintiff also alleges that Defendant discriminated against him by failing to give him a performance bonus in 2014. (*See* Doc. 37; Doc. 85 at 9, 16-17.)

The R&R concludes that Defendant is entitled to summary judgment because there is no genuine material dispute that: (1) the 2013 Employment Actions were not adverse actions within the meaning of Title VII; (2) the 2013 Employment Actions did not create a hostile work environment; (3) there is no evidence beyond Plaintiff's speculation and subjective beliefs that either the 2013 Employment Actions or the denial of a performance award in 2014 were unlawfully motivated. (Doc. 163.)  In reaching these conclusions, the R&R finds no genuine dispute concerning the following facts:

- AUO: Plaintiff was ineligible to earn AUO while on administrative-only duties pending investigation, because CBP policy precludes SBPAs from earning AUO while on administrative-only duties pending investigation. (*See id.* at 23, 33.)
- On-Duty Exercise: Plaintiff's supervisor denied his request to exercise on duty because supervisors have discretion in authorizing SBPAs to exercise on duty, and Plaintiff's supervisor does not allow SBPAs who are on administrative-only duties pending investigation to exercise on duty. (*See id.* at 16-17, 30-31.)
- Office and Office Equipment:  Plaintiff was assigned a shared office, computer, and telephone while on administrative-only duties, and he did not suffer any adverse consequences as a result of having to share the office and office equipment. (*See id.* at 22-23, 32-33.)
- Health Insurance Premium: Plaintiff submitted a leave without pay request for active-duty military leave for the period of July 29, 2012, to August 24, 2012, but he did not include a request to cancel his government-provided health insurance for that period.  After becoming aware of Plaintiff's desire

to retroactively cancel his health insurance, support staff sought guidance on the applicable policies, had Plaintiff complete an election of benefits form, and retroactively canceled the health insurance and related premium. There is no evidence that Plaintiff paid the health insurance premium prior to the cancellation of the bill. (*See id.* at 17-20, 31.)

- Administrative Leave for House Hunting: As a discretionary perk, CBP allows employees up to 40 hours of administrative leave for house hunting purposes, subject to certain restrictions. Plaintiff was approved for and took administrative leave for house hunting purposes from January 24-28, 2012, prior to reporting to the Ajo Station. Plaintiff's family joined him later in 2012. Plaintiff made a second request for administrative leave for house hunting purposes for the period of August 7-11, 2013, but that request was denied based on CBP policy. (*See id.* at 13-16, 29-30.)

- PIV Card: When Plaintiff returned to work on administrative-only duties pending investigation, he was issued an access card set to that of a BPA rather than an SBPA and was informed that he would not be issued a PIV card until he was cleared in CBP's internal investigation. After the internal investigation was closed, there was a temporary delay in the issuance of Plaintiff's PIV card because Plaintiff could not locate his old PIV card, which he was required to turn in to get a new card. Plaintiff received his new PIV card before such cards were required for building and computer access, and Plaintiff did not suffer any adverse employment consequences due to the delay in the issuance of his PIV card. Defendant's verbal admonishment of Plaintiff for allegedly losing his old PIV card is not at issue in this case. (*See id.* at 20-22, 31-32.)

- Travel Compensatory Time: Plaintiff attended a training class in November 2013, and he was told that he could try to put in for overtime but that his request might not be approved because there were no overtime funds. In

December 2013, support staff told Plaintiff that he had received overtime pay when there were no overtime funds available, that Plaintiff's overtime claim should have been coded as travel compensatory time, and that the overtime Plaintiff had received would be deducted from his pay. Although he did not receive overtime pay, Plaintiff was compensated for his travel to the training in the form of travel compensatory time. (*See id.* at 12-13, 27-29.)

- Plaintiff did not receive a performance bonus in 2014 because his performance met but did not exceed expectations, and he therefore did not meet CBP criteria for the award of a performance bonus. (*Id.* at 34-45.)

### III. Discussion

In his Objection to the R&R, Plaintiff argues that Defendant suppressed evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to "attach the Hostile Work Environment (HWE) claim to the PIV Card claim" and instead attaching "the verbal admonishment [claim] to another claim that is at the EEOC." (Doc. 164.) Plaintiff argues that Defendant "suppressed evidence that should have been presented" to this Court by "disintegrating the HWE claim from the PIV claim." (Doc. 164 at 1-2.) Plaintiff argues that Defendant created a hostile work environment by "admonish[ing him] for losing his PIV card, which Plaintiff had not lost." (*Id.* at 2.) Plaintiff further argues that he is not required to prove that Defendant acted with a racially discriminatory intent under a disparate impact theory. (*Id.*)

The Supreme Court's decision in *Brady* concerns the prosecution's duty to disclose evidence favorable to a defendant in a criminal case. *Brady* does not apply in civil actions such as the above-captioned case. To the extent Plaintiff is alleging a violation of disclosure rules applicable to civil cases such as this, he has not shown any such violations. To the extent Plaintiff argues in his Objection that Defendant created a hostile work environment by verbally admonishing him in 2014 for losing a PIV card that Plaintiff avers he did not lose, the R&R correctly concludes that the verbal admonishment claim is not at issue in this case; this Court previously denied Plaintiff leave to amend his complaint to

assert a claim based on the verbal admonishment issue because Plaintiff has not yet administratively exhausted that claim. (Doc. 85 at 11-13.)

Finally, to the extent Plaintiff argues that Magistrate Judge Rateau erred in requiring evidence of discriminatory intent, the argument is meritless. A plaintiff raising a disparate treatment claim alleges that he was treated less favorably than others because of a protected trait. *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 985-86 (1988). In contrast, a disparate impact claim challenges "facially neutral employment practices that have significant adverse effects on protected groups[.]" *Id.* at 986-87 (emphasis omitted). Here, Plaintiff raises only disparate treatment claims; he does not raise any disparate impact claims. Proving a disparate treatment claim requires evidence "that the defendant had a discriminatory intent or motive." *Id.* at 986. Accordingly, the R&R correctly concludes that Plaintiff needed to identify evidence establishing a genuine issue of material fact regarding discriminatory intent or motive in order to survive summary judgment on his claims. The Court will overrule Plaintiff's Objection to the R&R.

The Court has reviewed all unobjected-to portions of Magistrate Judge Rateau's R&R for clear error, and has found no such error. Accordingly,

**IT IS ORDERED** that the Report and Recommendation (Doc. 163) is **accepted and adopted in full**. Plaintiff's Objection (Doc. 164) is **overruled**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. 126) is **granted**, and Plaintiff's Motion for Partial Summary Judgment (Doc. 113) is **denied**. The Clerk of Court is directed to enter judgment in favor of Defendant and close this case.

Dated this 12th day of August, 2024.

_____
Honorable Rosemary Márquez
United States District Judge